CARROLL, Judge.
On July 3, 1967, the appellant, with one David Dennis, was charged by information with the crime of robbery, alleged to have been committed on June 21, 1967. When arraigned he pleaded not guilty. His trial was scheduled for January 11, 1968. Two days prior thereto a motion for mental evaluation of both defendants was made by the public defender, without specifying the reason or purpose thereof. The motion *47 was granted, and the court appointed Dr. H. Robin Mills to evaluate the two defendants.
On January 11, 1968, the day for which trial was set, counsel for the appellant informed the court that no evaluation report had been filed, but no motion for continuance was made. The evaluation examination was made on January 11, and by a report dated January 12 (but not filed in the clerk’s office until five days later), Dr. Mills reported Palmer competent to stand trial. The trial was held on January 12, 1968, and Palmer, who will be referred to as the defendant, was convicted of robbery and sentenced to imprisonment for 25 years, with credit for certain jail time served. The defendant had not pled guilty by reason of insanity, and there was no issue or defense of insanity in the trial.
On an appeal from the conviction, filed by Palmer and Dennis, no question regarding the evaluation matter was presented as a ground for reversal. The judgment was affirmed by this court. See Dennis and Palmer v. State, Fla.App.1968, 214 So.2d 661. Petitions of the defendant for review thereof by certiorari were denied by the Supreme Court of Florida (225 So.2d 525), and by the United States Supreme Court (393 U.S. 1070, 89 S.Ct. 729, 21 L.Ed.2d 714).
A subsequent motion of the defendant for relief under Rule 3.850 CrPR, 33 F.S. A. in which the said evaluation matter was not involved, was denied by the trial court on May 26, 1969. Later, on February 3, 1970, the defendant filed another motion for relief under Rule 3.850 CrPR, in which numerous grounds for relief were urged, again without reference to the evaluation matter. That motion was amended and supplemented on May 7, 1970, and was further amended on June 18, 1970, to include, for the first time, the matter of the evaluation. Therein reference was made to the fact that the doctor had been appointed to make a psychiatric evaluation of the defendant on January 9, 1968, and that his report had not been filed until January 17, 1968, which was five days after the trial. The motion contended that the report by Dr. Mills “reflects that the defendant had a valid defense of intoxication to the charge of robbery.”
It is to be noted that the defendant’s motion for relief, as thus amended, did not contend the report of the evaluation examination had shown that he was not competent to stand trial, when tried. With the last mentioned amendment to the motion, there was filed on behalf of the defendant a separate motion for an order for re-examination of the defendant by Dr, Mills. Based on the latter motion, on June 24, 1970, the court entered an order for the defendant to be examined by the said Dr. Mills. He was so examined, and on July 13, 1970, a written report was made by Dr. Mills.
In the earlier report of Dr. Mills, based on examination of the defendant prior to his trial, the conclusions reached were expressed as follows:
“Mental Status Examination: The patient on interview was well oriented in three spheres. His memory for the events in question were decidedly cloudy and he was apparently, by history and by Jackson Hospital records, in the midst of intoxication and/or delirium tremens at that time. I think it likely that he has suffered alcoholic ‘blackouts’ when he drinks. He gives a history of auditory and visual hallucinations that correlate with excessive drinking but not at other times or prior to his beginning of alcoholic abuse. He relates some concern about ‘root medicine’ and some occult experiences by one of his sisters who apparently predicted the death of his mother and father. He does not relate having these experiences himself and seems somewhat in awe of those that do.
“Impression: I feel that the patient knew right from wrong at the time he began the bout of drinking and that he was able to adhere to the right at that time. It seems credible that he had an *48 alcoholic blackout at that time since he has suffered alcoholic blackouts on numerous occasions in the past.”
The later July 13, 1970, report by Dr. Mills, in the opening part stated: “I had seen Mr. Palmer in psychiatric evaluation in the Dade County jail 1/11/68 and at that time reported my opinion that he knew right from wrong at the time of the alleged offense, that he was able to assist counsel, and that he was not schizophrenic, and that he suffered from alcoholic ‘blackouts’.” The doctor’s conclusions as stated at the end of that second report were as follows:

"Impression:

1) In my opinion, Mr. Palmer was not suffering from an alcoholic blackout on the day he was arrested. 2) In my opinion, the confusing picture which Mr. Palmer presents is a result to a great extent of conscious falsification. 3) In my opinion, Mr. Palmer is a chronic alcoholic. 4) In my opinion, he was very likely intoxicated with alcohol on the day of his arrest. This is based on the opinion by the psychiatry consultant at JMH four days after Mr. Palmer’s arrest, and based on the likelihood that he was intoxicated most of the time. It would be impossible for me to estimate his degree of intoxication on that date.”
On December 17, 1971, another such motion was filed on behalf of the defendant through counsel, stating a contention that the defendant’s conviction should be reversed because the proceedings on the evaluation were not completed prior to trial, and contending the report of Dr. Mills showed that “insanity would have been a material issue.” The trial court ordered the defendant to be returned to Dade County in order to be present at the hearing on the motion. Upon hearing and considering the motion the court entered an order denying it. This appeal is from that order.
On consideration of the record, briefs and argument, we find no reason in law has been shown to disturb the appealed order. The court’s denial of relief from the conviction, on the basis contended for, was eminently correct. First, and sufficient in itself, is the circumstance that the action of the court in proceeding to trial without first having received and held a hearing on the evaluation report of the doctor (if in fact the court did not have the report which was made on the date of trial) was a matter which was presentable, but was not presented on the initial appeal taken by the defendant from the judgment of conviction. See Fowler v. State, Fla.1971, 255 So.2d 513; Peterson v. State, Fla.App.1970, 237 So.2d 223; Swindle v. State, Fla.App.1967, 202 So.2d 132. In the recent Fowler case, where the matter was raised on appeal, in which failure of the trial court to have set a hearing on the question of competency to stand trial was held to be error, it was disclosed that the reports of two medical experts “clearly constituted reasonable grounds to believe the defendant insane.” However, in this case the initial report by Dr. Mills showed no incapacity of the defendant to stand trial, but rather the contrary. That leads to a second reason for supporting the appealed order, which is that since the result of the evaluation examination revealed the defendant was competent to stand trial, the error of proceeding without the prior filing thereof or a prior hearing thereon was harmless. The third reason is that the record shows the trial court gave careful and continued consideration to this matter as raised in the several motions relating thereto, and in spite of an adequate preliminary report by the doctor ordered a second examination, the result of which was to confirm and strengthen the opinion expressed by the doctor in the first instance, of competence of the defendant to stand trial.
For the reasons assigned the order appealed from is affirmed.